ALBANY,
Feb. 1810.

SANDS and CRUMP
v.
TAYLOR and LOVETT.

Sands and Crump *against* Taylor and Lovett.

THIS was an action of *assumpsit*, brought to recover the price of a cargo of wheat, sold by the plaintiffs to the defendants, at ten shillings the bushel. Plea *non assumpsit*. The cause was tried before Mr. Justice *Van Ness*, at the *New-York* sittings, the 19th *April*, 1809, and a verdict was taken for the plaintiffs, subject

A. sold to B. who was a malster and brewer, a cargo of *Virginia* wheat, and it was known to B. to be southern wheat, which is always more or less heated, but not so as to injure it when

manufactured into flour, though it renders it unfit for malting. A *sample* of the wheat, taken, in the usual manner, from the cargo, was exhibited to B. before the purchase, which, on experiment, he found to *malt*. He received a part of the cargo; but, finding some of it heated, and unfit for malting, he refused to receive the remainder; though it was good merchantable wheat, and equal to any southern wheat. A. tendered the residue of the cargo to B. and gave him notice, that unless he received and paid for the whole, the residue would be sold at public auction, and B. held responsible for any deficiency in the amount of sales. It was held, that the sample of the wheat exhibited to the vendee, was a fair specimen of the quality of the article; that a contract, and delivery of a part, transferred the property to the vendee; and that the subsequent sale of the residue of the wheat at auction, was not a waiver of the contract; the vendor being, by the refusal of the vendee to accept the wheat, at liberty to abandon it, or to dispose of it, *bona fide*, as agent of the vendee, to the best advantage, by a sale at auction.

ALBANY,
Feb 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVE—

to the opinion of the court, on a case, containing the following facts.

The cargo was brought from *Virginia*, and *Pollard*, the master of the vessel, testified that *Taylor*, one of the defendants, came on board, and examined the wheat, which was stowed in bulk, by running his arm down, about 18 inches, near the hatchway, into the wheat, which is the usual way of examining a cargo of wheat ; he knew it was southern wheat, and the witness understood that one *William Pearsall* had made the contract for the wheat, in the first instance. The master and *Taylor* went to the plaintiffs, where the contract for the purchase of the cargo, at 10 shillings a bushel, was confirmed, and the defendants were to give their notes payable in two and four months. This was about the 18th or 20th of *December*, 1807, and nothing was said, in the hearing of the master, about the sample shown to the defendant by *Pearsall*, nor was any representation made, as to the quality of the wheat, except that it was merchantable. After about 400 bushels of the wheat were delivered, the defendants refused to take the residue. The master had been employed in bringing wheat from the southward, and was of opinion, that the cargo sold to the defendants was better than the generality of cargoes ; that the wheat remaining, after the defendants refused to receive more, was better than what had been delivered. Cargoes of wheat, coming from the southern states, are always more or less heated, particularly that which lies near the hatchway, and at a small distance below the surface ; and there is no other way of examining it, but by thrusting the arm down into the wheat ; that some lumps were discovered, after a part was delivered, which were laid aside ; very little of the wheat was injured, and the whole quantity put aside, as damaged, did not exceed three or four bushels ; and none of the wheat, which could be considered as damaged, was delivered to the defendants. The residue

of the cargo, which the defendants refused to receive, was put into a store by the plaintiffs, who, on the 2d *February*, 1808, addressed the following letter to the defendants, which was received by them, on the 5th *February* :

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

" GENTLEMEN,

" On the 18th day of *December* last, we sold you a cargo of wheat, then on board the schooner *Hannah*, Captain *Pollard*, master, at 10 shillings *per* bushel, of 60 pounds, payable in your notes, at 2 and 4 months, in equal sums each. On the 19th *December* you received 376 bushels, and refused to take any more. On the 21st *December* we apprized you, that we should hold you responsible for all the injury we might sustain, by your refusing to take the residue of the cargo of wheat ; and also informed you, that we had found it necessary to discharge the residue of the cargo of wheat, and that the same was put in the store of *S. H. Grinnill*, (*Old Slip*,) where it now is, and ever since has remained, subject to your control, but which you have neglected and refused to accept.

" We now give you notice, that unless you shall accept the said wheat, by removing it from the said store, before *Saturday* next, the 6th inst. that we shall cause the same to be advertised and sold, at public auction, to the highest bidder, on *Thursday*, the 11th day of *February* instant, at 1 o'clock P. M. at the *Tontine Coffee-House*, in the city of *New-York*, and we shall give you credit for the amount received, and charge you with the balance, if any deficiency there shall happen to be. We take this opportunity of demanding from you the notes which were to have been given to us, agreeable to your contract, and which you will please to deliver to the bearer."

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

A bill of the wheat was also delivered to the defendants, and the notes demanded, which were refused. The defendants admitted the receipt of the letter of the plaintiffs, giving notice of their intention to store the wheat.

The measurer of the wheat testified, that the residue of the cargo, which was put in store, was good merchantable wheat, to which millers could not object, and might be manufactured into flour; that some of it, perhaps 100 bushels, was somewhat overheated.

*William Pearsall*, a witness on the part of the defendants, testified, that he was employed by the plaintiffs to sell the wheat in question, and that he carried a sample of the wheat to the defendants; that the sample was obtained by running his arm, as usual, into the hold of the vessel. The defendants kept the sample two or three days, for examination; and the wheat was sold according to the terms agreed on between him and the defendants, who are *brewers*. The witness said he knew of no other way of selling wheat but by sample; some of the wheat which he examined, while the cargo was unlading, was a little damp, and in lumps which were put aside. This was known to be southern wheat, which is always somewhat heated; the heated part was about 18 inches below the surface of the hatchway. The cargo of wheat, except the part so heated, was as good as southern wheat usually is, and was merchantable, and fit for making flour. When lumps are found, they are always thrown aside, as was done in the present case. Nothing was said to the defendants about its being fit for malting, nor as to its being merchantable. The market price of southern wheat was 10 shillings a bushel; and except the heated part, (being from 50 to 100 bushels,) the whole cargo was of the same quality as the sample delivered.

It was proved by two maltsters, that two or three of the loads of wheat delivered were cool, and very fit for

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVE [?].

malting ; that what was delivered afterwards, was heated, had a vinous smell, and contained a number of clotted lumps. The defendants offered to prove, that the sample of wheat, left by *Pearsall* with the defendants, had been tried, before the contract was concluded, and had malted very well ; but that the wheat, which had been delivered, would not malt. This testimony was rejected by the judge as irrelevant.

The defendants, on the 19th *December*, 1807, tendered to the plaintiffs their notes, for the amount of the wheat received by them.

The counsel for the defendants objected, that the plaintiffs, by selling the wheat at auction, after it had been nearly two months in store, had made it their own, and were not, therefore, entitled to recover from the defendants the difference between the nett proceeds of the sale by auction, and the price agreed on by the original contract. The judge overruled the objection, being of opinion, that the plaintiffs were entitled to recover this difference.

The judge, in delivering his charge to the jury, stated, that this could not be considered strictly as a sale by sample ; and that in giving a construction to a contract, the intention of the parties was principally to be regarded. That it could not be presumed that a seller could ever intend to warrant that every part of such a cargo, as wheat, was in as good order as the sample produced. The cargo was the same kind of wheat as the sample, and the jury were to consider what was the intention of the plaintiffs. As making wheat into flour is the ordinary use to which wheat is applied, the jury had a right to suppose that the defendants purchased it for that purpose ; and the plaintiffs ought not to be considered as having in view the intention of the defendants, to convert it into malt. The defendants, when they purchased the wheat for a use to which it is not ordinarily applied, should have required from the

VOL. V.                        3 E

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

plaintiffs a special warranty that it was fit for that particular purpose; that if the jury thought that the wheat was what is called merchantable wheat, and such as millers would purchase, without objection, they ought to find a verdict for the plaintiffs.

The jury, accordingly, found a verdict for the plaintiffs, for 1,090 dollars and 73 cents, being the balance, after deducting the nett proceeds of the sale at auction, charges of measuring, carting, storing and commissions, and including the interest on the whole principal sum, from the 18th *February*, being two months after making the contract; and it was objected by the defendants' counsel, that the interest should have been calculated on one-half of the principal after 2 months, and on the other half at 4 months from the time of the contract.

*Harris*, for the defendants. This was a sale by sample; and the plaintiffs must be considered as warranting the whole cargo to be like the sample. In the case of *Hibbert* v. *Shee*,\* it was decided, that in a sale of goods by sample, if the bulk of the goods did not agree with the sample, the purchaser was not bound to accept and pay for them; though it was the usage in such cases, for the bargain to stand good, and an allowance to be made for the inferiority of the article. The case before the court is stronger. The defendants were *brewers*, and bought the wheat for the purpose of having it made into malt. The intention of the buyer, as well as the seller, is to be regarded; and the plaintiffs knew the object for which it was purchased.

Again, the storing and subsequent sale of the wheat, not actually delivered, amounts to a dissolution of the contract of sale, or a waiver of the delivery. Where the price is not paid, the vendor cannot bring his action without having delivered, or offered to deliver the article sold. If the vendee does not come and take the goods,

\* *Campb. N. P.*
113.

and pay for them, the vendor may request him to take them away ; and if the vendee does not do so, in a reasonable time, the vendor may dissolve the contract and sell them to another person ;* but it does not follow that he may call on the vendee to make good any difference of price. The vendor must have it in his power to deliver the wheat, before he can call on the vendee for the price. Suppose after the sale at auction, the defendant had demanded the wheat of the plaintiffs, and offered to pay for it, could the plaintiffs have brought their action, without a delivery ?

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

Salk. 113. 6
Mod. Rep. 162.
Bull. N. P. 50.

*Wells*, contra. If this was a sale by the plaintiffs, and not by *Pearsall*, then it was not a sale by sample. The evidence clearly shows, that though the terms of sale were stated by *Pearsall*, the bargain was not concluded by him. That it was not a sale by sample, is also confirmed by the fact, that one of the defendants went and examined the cargo.

But admitting it to be a sale by sample, we contend that the cargo did correspond with the sample, and was good, merchantable wheat, except a few bushels which were thrown aside. The plaintiffs did not undertake that it should malt. It was enough that it would answer the ordinary purpose of wheat, that of being converted into flour. The plaintiffs received the ordinary price for such wheat, and could have sold it to the manufacturers of flour, at the same price.

Admitting that a sale by sample amounts to a warranty; yet what did the plaintiffs warrant? That it should make good *flour* ; not that it would make good *malt*. All that can reasonably be required under the warranty is, that the great bulk of the cargo corresponded with the sample ; not that every grain of wheat should be equally good.

The subsequent sale by the plaintiffs at auction, did not dissolve the contract made with the defendants. Af-

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

ter the refusal of the defendants to receive and pay for the wheat, the plaintiffs must be considered as their agents. It would be unreasonable to oblige the plaintiffs to keep the property for an indefinite period of time, especially when of a perishable nature.

It is a settled practice, that where a merchant here, orders goods from abroad, and the goods sent do not correspond with the order, for the person receiving the goods, to sell them, as the agent of the shipper, and for his account. If a horse is sold and warranted sound, and afterwards proves to be unsound, the vendee may offer to return him, and if the vendor refuses to take the horse back, the vendee may sell him for the account of the vendor. On the same principle, the vendor should have the power to sell, where the vendee refuses to receive the goods and pay for them, when merchantable, according to the contract.

* 4 Esp. Rep. 251.

In the case of *Martens* v. *Adcock*,* Lord *Ellenborough* decided, that the vendor might recover the loss, or difference of price, arising on a resale, as well as damages, for not taking away the goods ; and that it was no objection to his recovering on the general count for goods sold and delivered, that he had not the goods *then* ready to deliver.

In the case of *Hibbert* v. *Shee*, the sample of sugar produced was *white*, and the article was brown, and there was a material difference in the value. I have understood, that in the case of *Heermance* & *Radcliff* v. *Yeomans*, decided in this court, many years ago, the principle for which we contend, as to the power of the vendor of goods, to resell them, and call on the vendee for the difference of price, was adopted.

*T. A. Emmet*, in reply. The plaintiffs knew that the defendants purchased the wheat for the purpose of being *malted*. *Pearsall* was the agent of the plaintiffs ; the terms proposed by him were accepted by the defendants ;

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVET .

and the plaintiffs must be bound by the acts of their agent. A sale by sample, is a special warranty, that the whole agrees with the sample ; and that the whole article is fit for the same purpose as the sample. The ordinary use of wheat sold in *New-York*, is for malting ; at least it is not an extraordinary purpose to which it is to be applied.

Whether it was a sale by sample or not, was a question of fact, and ought to have been left to the jury ; but the judge decided it, and the jury were misdirected.

The resale was a waiver of the contract, if the defendants chose to consider it as such. If the contract of sale existed, the tender of the goods transferred the property to the defendants ; but could they have maintained trover for them ? Where did the plaintiffs obtain their authority to sell ? If they had an authority to sell, yet they had no power to sell on a credit. Suppose the purchaser of the wheat, at the resale, had failed before the expiration of the 30 days credit, must not the plaintiffs have borne the loss ? Such a sale by the plaintiffs on credit, was a complete act of ownership.

The true rule is laid down, in *Langfort v. Tiler*,* that * *Salk.* 119. where the vendee does not come and take away the goods, and pay for them, on being requested to do so, it amounts to a dissolution of the contract, and the vendor may sell the goods to another person, without being liable to an action on the contract, at the suit of the original vendee, for damages. If the contract be dissolved, there can be no action upon it, in any form ; unless the power of resale, as in the case of *Martens v. Adcock*,† is a part of the original contract of sale. If † 4 *Esp. Rep.* 251. the power of resale is always implied, as an incident to every contract of sale, why should it be made an express stipulation in sales at auction?

The practice of selling goods not corresponding to order, does not exist where both parties reside in the same

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

*place. It is founded in necessity, to save the expense and risk of transportation to a great distance.

SPENCER, J. The questions arising from the case are, 1st. What was the nature of the sale of the wheat; is it to be considered a sale by sample and a warranty that the cargo would answer every purpose, which the sample would? and

2d. Was the subsequent sale of the wheat at public auction, such a dissolution of the contract, as to take away the plaintiffs' right to the difference between the sale to the defendants and that at auction?

In considering this case, I shall take it for granted that the sale of the wheat was by *Pearsall*, the plaintiffs' agent; that it was by sample; that he knew the defendants' object in purchasing, was to malt the wheat, and that the sample malted, but the residue of the cargo would not. These admissions must, however, be connected with other facts warranted by the case, such as that the cargo was southern wheat, known to be so, by the defendants, when they purchased it; that the difference between the sample and the cargo consisted in a part of the latter being heated; but that it was not more, nor so much heated, as southern cargoes usually are, and that the defendants are brewers and maltsters.

It has been frequently decided here, that on the sale of a commodity, no action can be sustained for any difference in quality between the thing contracted for and the thing delivered, unless there be fraud or a warranty; I am disposed to confine this rule to the case of a sale where the thing sold is exhibited, and am ready to admit, that on sales by sample, there is an implied warranty that the sample, taken in the usual way, is a fair specimen of the thing sold. It appears to me that the sample by which the defendants purchased, was a fair exhibition of the quality of wheat, of which the cargo consisted; it was taken out in the usual manner, by

ALBANY,
Feb. 1810.

SANDS and
CRIMP
v.
TAYLOR and
LOVETT.

the plaintiffs' agent running his arm down and drawing out the sample ; and there is no pretence that there was any difference between the sample and the cargo, except that the latter was heated in a manner incident to every cargo of southern wheat. This deterioration of the cargo, and which undoubtedly prevented its malting, was a fact against which the exhibition of the sample did not warrant, and it is a fact with which the defendants must be presumed acquainted ; for the law will presume every dealer in articles brought to market acquainted with all the circumstances usually attendant on cargoes composed of those articles. It seems to me to result necessarily from these facts, that the defendants' ground of refusal to receive the residue of the cargo, after a part had been delivered, is not that there has been any thing represented, by the exhibition of the sample, unfair in itself and deceptive ; but that the defendants themselves made the purchase without a competent knowledge of the usual and customary course of the trade. This, I think, is what they cannot be permitted to take advantage of.

Although I have not adopted the same course of reasoning which was used by the judge, at the circuit, the result is the same, and the evidence which he overruled, I have considered as having been given.

The contract between the parties, and its part execution, produced a change of property ; the defendants became entitled to the wheat, and the plaintiffs to the price stipulated to be given for it. After the defendants refused to accept the residue of the cargo, it was thrown on the plaintiffs' hands ; and they were, by necessity, made the defendants' trustees, to manage it ; and being thus constituted trustees, or agents, for the defendants, they must either abandon the property to destruction, by refusing to have any concern with it, or take a course more for the advantage of the defendants, by selling it. There is a strong analogy between this case and that of

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

the assured, in case of an abandonment, when a loss has happened within the terms of the policy, and the assurer refuses to accept the abandonment. In both cases, the party in possession is to be considered an agent to the other party, from necessity : and his exercise of the right to sell ought not to be viewed as a waiver of his rights on the contract. This rule operates justly, as respects both parties ; for the reasons which induced the one party to refuse the acceptance of the property, will induce the other to act fairly, and to sell it to the be. t advantage. It is a much fitter rule, than to require it of the party, on whom the possession of the thing is thrown, against his will, and contrary to the duty of the other party, to suffer the property to perish, as a condition on which his right to damages is to depend. "

There are no adjudications, in the books, which either establish or deny the rule adopted in this case ; but it appears to me to be founded on principles dictated by good sense and justice. A case was mentioned, in the argument, *Heermance* & *Radcliff* v. *Yeomans*, decided in this court, many years since, of which no report is extant. I recollect the case : the principle now adopted was recognised in that case. On the whole, I think the rule now established by the court is a safe one, and conducive to the attainment of justice between the parties.

THOMPSON, J. and YATES, J. were of the same opinion.

VAN NESS, J. If the circumstances under which the sale in this case was made, do not imply a warranty, that the whole cargo would malt, and if the plaintiffs have not im paired their right to recover, by subsequently disposing of that part of the wheat which was stored, upon the defendants' refusal to receive it, there

is no doubt but that the verdict is right. When the de-
fence, which I overruled on the trial, was opened, it
struck me, that if the law was, as it was stated to be by
the defendants' counsel, it would operate very unjustly
in the present case, and in all other sales of a similar
commodity. I, therefore, without hesitation, refused
to admit it, and I am now perfectly satisfied I was
right.

Every fact relating to the condition of the wheat; the
place from whence it came, as well as the injury to which
it was liable in the transportation, were as well known to
the defendants as to the plaintiffs. There was no mis-
representation or concealment; and there is, therefore,
no pretence for imputing the least fraud to the plaintiff
or his agent, in the transaction. If, then, the evidence,
that the sample did malt, and the cargo would not, was
material, it must be because there was an implied un-
derstanding, that the cargo would answer the particular
purpose to which it is said the defendants intended to ap-
ply it. I told the jury, that this was not strictly a sale
by sample, and I still think so. The defendants examined
the wheat for themselves, and exercised their own judg-
ments and skill, when they agreed to buy it. I do not
mean to say, that if the bulk of the cargo had been un-
fit for the purpose to which wheat is ordinarily applied,
or if it had not been merchantable, or if it had turned
out to be manifestly inferior to, or of a different quali-
ty from, the sample, that the defendants would, never-
theless, h e been obligated to receive and pay for it.
But none of these things appear in this case. The fact
whether the wheat was merchantable or not, was dis-
tinctly left to the jury, and it was expressly stated by
*Pearsall*, one of the defendants' witnesses, " that, except
the heated part, the whole cargo was equal in quality to
the sample delivered." Whether the wheat would malt
or not, was unknown, probably, to both parties; and to
say that either party contemplated a warranty, that it

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

would malt, is not supported by any one fact in the case. And, it is certain, that nothing was more foreign from the plaintiffs' intentions. The defendants did not ask the question ; and, as all southern wheat is more or less heated, which, it is said, destroys the vegetating quality, it may fairly be presumed, that the defendants knew that some portion, at least, of this cargo would not malt.

If the defendants intended to hold the plaintiffs liable for a defect which was equally unknown to both parties, it was incumbent upon them to have exacted an express warranty for that purpose ; and not having done so, they have no just cause to complain.

The case of *Parkinson* v. *Lee* is a much stronger case in favour of the plaintiffs than the present. That was a sale of hops, (part of which appeared, after the delivery, to be damaged,) *by sample, with a warranty* that the bulk of the commodity answered the sample. The court determined, that the law did not raise an implied warranty, that the commodity should even be *merchantable*, though a fair merchantable price had been paid for it ; and that if there be *a latent* defect existing at the time of the sale, unknown to the vendor, and without fraud on his part, such seller is not answerable, though the goods turned out to be unmerchantable. *Lawrence*, J. said, " here was a commodity offered for sale, which might or might not have a latent defect : *this was well known in the trade :* and the plaintiff might, if he pleased, have provided against the risk, by requiring a special warranty. Instead of which, *a sample was fairly taken from the bulk*, and the plaintiff *exercised his judgment upon it ;* and knowing, as he must have known, as a dealer in that commodity, that it was subject to the latent defect which afterwards appeared, *he bought it at his own risk.*" Almost every word of what is here said, and which is reiterated by the rest of the court, is applicable to this case. The defect here was

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

latent, because it was to be detected by actual experiment only, and it was utterly unknown to the plaintiff. The principle upon which the case of *Parkinson* v. *Lee* was determined, has often been sanctioned by this court. (*Seixas* v. *Wood*, 2 *Caines*, 48. *Snell and others* v. *Moses*, 1 *Johns. Rep.* 96. *Bayard* v. *Malcolm*, &c. 1 *Johns. Rep.* 431.)

In what respect the case from *Campbell's N. P. Rep.* is supposed to apply to the one before us, I have not been able to discover. There Lord *Ellenborough* goes expressly upon the ground, that the quality of the sugar offered to be delivered, was different from the sample. Here the quality of each was the same. There is this further manifest distinction ; in that case there was an essential difference between the market price of the sample, and the bulk of the sugar ; whereas in this, the whole cargo was worth, in the market, the whole price which the defendants agreed to pay for it.

But it is contended, that the sale, by the plaintiffs, of that part of the cargo which was stored, has discharged the defendants from all liability. This is a very clear point. The defendants being bound, by the contract, to receive and pay for the whole cargo, and having refused to do either, what were the plaintiffs to do ? The article was perishable, and the interest of all parties required, that the most should be made of it. Nothing, therefore, is more reasonable, than that the plaintiffs, who were not bound to store or purchase the wheat, should be permitted to sell it, at the best price that could be obtained. The defendants have no right to complain. Had they taken the wheat, as they ought to have done, a sale by the plaintiffs would not have been necessary. The recovery here is only for the difference between the nett proceeds of that sale, and the price agreed upon in the original contract. In the case of *Langford* v. *Administrators of Tyler*, (1 *Salk.* 113. and *S. C.* 6 *Mod.* 162.) *Holt*, Ch. J. ruled, " that, after notice

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

given, the vendor cannot sell the goods to another, without default in the vendee, and, therefore, if the vendee do not come to pay and *take the goods*, the vendor ought to go and request him, and then if he do not come to pay, and take away the goods in convenient time, the agreement is dissolved, *and he is at liberty to sell them to any other person.*" These prerequisites were all complied with before the resale took place.

But it was urged, that according to the case just mentioned, the contract is considered as dissolved. Be it so; but can there be a doubt that the defendants are liable for the difference in price, being a loss on the resale? (1 *Comyn on Con.* 220.) Such suits have frequently been brought; and such, as it respects the wheat the defendants refused to accept, is the present suit.

My opinion, also, is, that the plaintiffs are entitled to judgment; but that the interest ought to be calculated according to the rule contended for by the defendants.

KENT, Ch. J. I am of the same opinion. The sale by sample was not a warranty as to the soundness of the cargo, nor was it so understood by the parties. The cargo corresponded with the sample in quality of grain, and that was all that was intended by the exhibition of the sample. If the purchaser had not been willing to have taken upon himself the risk of the sound or unsound condition of the wheat, he should have called on the plaintiffs for a special warranty. The case of *Parkinson* v. *Lee* (2 *East*, 314.) is a case in point, in support of this doctrine. Nor was the subsequent act of the plaintiffs, in selling the wheat not delivered, a waiver of their claim for damages for non-performance of the contract. The usage, in such cases, is to sell the article, after due notice to the other party to take it, and that in default of doing it, the article will be sold. This usage is convenient and reasonable, and for the best interest of both parties.

What was said by Lord Ch. J. *Parker*, in *Cuddee v. Rutter*, (*5 Vin.* 538.) goes in support of this practice. The vendor ought to have the benefit of that principle, as well as the vendee. It would be unreasonable to oblige him to let the article perish on his hands, and run the risk of the solvency of the buyer. The course adopted was proper, and ought to be sanctioned.

ALBANY,
Feb. 1810.

SANDS and
CRUMP
v.
TAYLOR and
LOVETT.

Judgment for the plaintiffs.