# Smyth *against* Craig.

S., the defendant, bought and received from C., B. & Co., flour; to be paid one-half in cash, one-half in notes·at sixty days. Being pressed for payment, he consented to let molasses, in his distillery, stand either as their property or as collateral security, on condition they would take his notes·at sixty and ninety days, in lieu of the former terms. He pointed out the molasses, consisting of 400 hogsheads, to be ascertained by counting them off, in rows, from a particular·place, and in a particular manner. He agreed to send them the rum to be distilled from the molasses, to be sold by them, and applied to his debt. *Held* that on this state of facts, C., B. & Co. could not recover the molasses in replevin, as there was no delivery of possession or pawn.

The defendant subsequently failed, and then agreed to deliver to C., B. & Co. 350 hogsheads of molasses, and 25 hogsheads of rum, distilled from the other 50, and set apart in a shed; the whole to be gauged at C., B. & Co.'s warehouse, by S., a grocer, and then the notes to be delivered up to the defendant. Next morning he repeated the conditions to them, and told them to go to the yard, and mark the hogsheads accordingly, and directed them to haul them away, should he fail to attend, as he promised. They accordingly marked the rum and molasses with the initials of their firm; the notes were withdrawn from bank and handed to the plaintiff, who had taken the place of the firm. They were then tendered to the defendant, who refused to receive them or deliver up the goods. The·plaintiff issued his replevin. *Held:* the plaintiff was entitled to recover.

If rum and molasses, in the vendor's possession, are sold in discharge of an antecedent debt, and are specifically ascertained and marked by the vendee, and the agreement is that they are to be gauged, and the price fixed, at the purchaser's warehouse by a third person, named, and afterwards the vendor refuse to permit them to be taken to the warehouse, this prevention may be taken for performance; and the jury may give the vendee a reasonable price for the articles in damages in replevin.

Whether goods marked and separated are actually delivered to the vendee, is a question of intention, to be determined by the jury on a trial, or by the Court on a demurrer to evidence.

A power of attorney, coupled with an interest, is irrevocable; and such is the case of a power given to a third person to fix the price of goods sold in discharge of a debt.

A prayer for nonsuit under the 7th Section of the Act of 11th March 1836, amounts to a demurrer to evidence, except that the Judge cannot give judgment

[Smyth v. Craig.]

for the plaintiff, though he should think the nonsuit not grantable, but the case must then go to the jury.

THIS was a writ of error to the District Court of the city and county of *Philadelphia;* in which this action of replevin was brought by Andrew C. Craig, the defendant in error and plaintiff below, against the plaintiff in error and defendant below, Samuel Smyth, for 350 hogsheads of molasses and 25 hogsheads of rum, of the value of $9000.

At the trial in the court below, after the plaintiff had gone through his evidence, the defendant, who offered no evidence, moved the court for a nonsuit; which was ordered, and was afterwards confirmed by the court in bank; and this writ of error was taken pursuant to the provision of the 7th Section of the Act of 11th March 1836, that whenever the defendant upon a trial there, offers no evidence, it shall be lawful for the Judge to order a judgment of nonsuit, if in his opinion the plaintiff shall have given no such evidence as in law is sufficient to maintain the action, with leave, nevertheless, to move the court in bank to set it aside; and, in case of refusal, the plaintiff may remove the record, by writ of error, into the Supreme Court for revision and reversal, in like manner, and with like effect, as he might remove a judgment rendered against him upon a · demurrer to evidence.

The plaintiff claimed as assignee of Craig, Bellas & Co., who asserted title to the property in question; and the case appeared, in substance, to be as follows:

In December 1839, Craig, Bellas & Co. sold to the defendant, a distiller on the Schuylkill, 1400 barrels of flour, valued at from $8000 to $9000, to be paid for one-half in cash, and one-half in defendant's notes at 60 days. They were put on board the same vessel which had brought to this port a cargo of molasses for the defendant. After the vessel had sailed with the flour, C., B. & Co. called on defendant for payment; which he was unable to make. He offered his notes at 60 and 90 days; which they refused. The next day he again offered his notes at 60 and 90 days, and that the molasses should remain in his yard, as theirs, or as collateral; and as he should distil it into rum, he would send it to them to sell on commission, to liquidate the notes. They agreed, and went out to the distillery, with the defendant, and saw the molasses in the defendant's yard. They counted out 400 hogsheads, commencing at the wagon-way, and going west. The defendant told the drayman to charge the hauling to C., B. & Co.; which was done, and they afterwards paid it. Next day the defendant brought a sample of the molasses to them, and gave his five notes, dated in November and December 1839, at 60 and 90 days. In January following the defendant failed. One of the firm, on the 8th of January, called on the defendant, who said all

was right, and the molasses was still there, and he would call next morning; which he did. He then offered a lot of ground in New Orleans; which they refused. At a subsequent interview, in the evening of the same day, the defendant said, he had 25 hogsheads of rum in the shed adjoining the distillery — he would sell them that, with 350 hogsheads of molasses — these, he thought, would cover his notes — the price to be left to two disinterested grocers, to be gauged and valued after delivery at C., B. & Co.'s warehouse, on condition they were to return him his notes. One of the firm named Mr. Stevens, on their part — the defendant said he was satisfied to leave it to Mr. Stevens alone. The bargain was then concluded.

The next morning, the 9th of January, the defendant again offered the New Orleans lot ; but C., B. & Co. refused it. He then repeated the conditions of sale, and told them to go out to the distillery, and see the molasses and rum, and mark them. He would be there at 11, or half-past 11 o'clock, to receive his notes and deliver the rum and molasses, and if he was not there, they might begin and haul away, beginning at the west side of the yard, at the wagon-way. They went out and marked them C., B. & Co. They took up such of the notes as were in bank, and sold and assigned the rum and molasses to the plaintiff, for his note at six months, for $9069 63 cents, since paid. The plaintiff called on the defendant, with C. & B.; told him of his purchase; tendered the notes and demanded the goods; but the defendant refused to deliver them, saying, it would destroy his arrangements; and the replevin was issued.

The following errors were assigned:

1. The court below erred in nonsuiting the plaintiff, when there was evidence which ought to have gone to the jury.

2. The court below erred in the decision of the questions of evidence set forth in the bill of exceptions.

*Hirst* and *Cadwallader*, for the plaintiff in error, contended, that the court below erred in entering a nonsuit, the evidence showing a transfer and delivery of the property to the plaintiff; and, at any rate, it was fairly inferrible as upon a demurrer to evidence. It must be observed that the case was entirely between vendor and vendee.—No creditor or purchaser intervenes. Nor are cases under the Statute of Frauds applicable in this state — nor those that relate to stoppage *in transitu.* Here the consideration existed previously; flour having been sold to the defendant, and not having been paid for ; and this made the contract in relation to the molasses and rum irrevocable. We might insist on the right to them, as the direct proceeds of the flour, fraudulently taken without payment. Even as a mere pledge, a jury might say we had a right to the possession. But independently of these, there was a positive sale on the 8th of January; and nothing that remained to be

done was of a nature to affect it. The gauging and valuing were not conditions precedent to the delivery — they were not to precede, but to follow it. They were mere matters of arithmetical computation, or mechanical execution, to settle the accounts between the parties, but not affecting the right of property. At any rate, it would have been a question for the jury to determine, what was the intention of the parties, as to the change of property : for it is consent to sell and buy which vests title. 2 *Kent's Com.* 492, 508 ; *Chitt. Cont.* 110 ; *Stark. Ev.* 1610. In *Macomber* v. *Parker*, (13 *Pick.* 182), it was held, that a sale is complete, if the goods are delivered, notwithstanding the goods are to be counted, weighed, or measured, in order to ascertain the amount to be paid for them. In *Riddle* v. *Varnum*, (20 *Pick.* 283), it was decided, that where there are no positive circumstances to fix it, the question whether the sale was complete, depends on the intention of the parties. An examination of the cases will show, that the dividing point is, whether there is any thing further to be done by the seller ; if there is, then the loss is to fall on him—if otherwise, on the buyer. Of the former class, are, 5 *East* 570 ; 6 *East* 614 ; 7 *East* 570 ; 5 *Barn. & Cres.* 857, (12 *E. C. L.* 388) ; 12 *East* 522, 614 ; 13 *East* 522 ; 6 *Taunt.* 176 ; 2 *M. & S.* 397 ; 5 *Taunt.* 622. Of the latter ; 2 *Bing. N. C.* 151, (29 *E. C. L.* 288) ; 6 *Barn. & Cres.* 388, (6 *E. C. L.* 207). If the sale is for cash, and nothing is said as to credit or payment, the property passes, on tender of the price ; 10 *E. C. L.* 479 ; *Noy's Max.* 87.

The plaintiff could maintain replevin as assignee. In 15 *Mass. Rep.* 408, it was determined that the pawnee may sell and assign all his interest in the pawn to a third person ; for one having a qualified property, may dispose of it. *A fortiori* the vendees here, having the absolute property, could dispose of it to the plaintiff. The case of *Ward* v. *Shaw*, (7 *Wend.* 404), relied on by the court below, does not resemble this, and is not consistent with *Bates* v. *Conkling*, (10 *Wend.* 389).

*Hieskell* and *Meredith, contra.*

The flour was delivered, and not stopped *in transitu ;* its not having been paid for, gave the vendors no lien on the molasses. The agreement afterwards, that the molasses should be collateral security, gives no lien on it : there was no possession, or right of possession, in the pledgee. Moreover, it was waived by the subsequent agreement. *Cross on Lien,* 38, 40. Being a right altogether personal, it was not transferable to the plaintiff. *Ibid.* 48. Nor was the right of Craig, Bellas & Co. assignable to the plaintiff, no tender of the notes having then been made, and being altogether contingent and speculative.

The principal question is, was there a complete sale and delivery. We admit it is not to be governed by cases under the English Statute of Frauds, which is not in force here ; but we

deny that at common law, the contract was so far executed as to vest the property in the plaintiff, so as to authorize him to take it, or recover it in replevin. It was still executory — dependent on something yet to be done before the property can be considered as delivered, and which the defendant refused to execute. The principle is stated in *Pritchett* v. *Jones*, (4 *Rawle* 260), that a contract for a subsequent delivery is executory—it is so when the price remains to be fixed hereafter, depending on the fluctuations of the market. Here the particular hogsheads were not designated — the precise three hundred and fifty were not pointed out by the vendor. The delivery was yet to be preceded by the performance of a condition—the goods were to be gauged and valued and the five notes to be delivered up. All these the defendant refused, and left the contract incomplete. The fixing of a price is an indispensable ingredient in making a sale. *Dutilh* v. *Ritchie*, (1 *Dall.* 171). Until that was done, the goods continued at the risk of the vendor. *Ward* v. *Shaw*, (7 *Wend.* 404), decides the present case, nor is the case of *Bates* v. *Conkling*, (10 *Wend.* 389), opposed to it.

The opinion of the Court was delivered by

Gibson, C. J. — The statute by which the court below is constituted, directs that when the defendant shall have given no evidence, the presiding judge may direct a nonsuit, if the plaintiff's evidence be insufficient in his opinion to make out a case; and hence it results, not only that the evidence must be taken to be true, but that every inference of fact which a jury might draw from it in favour of the plaintiff, must be drawn by the Judge: else the plaintiff might be deprived of his constitutional privilege, and the statute would be so far void. In such a case, therefore, the defendant's prayer for a nonsuit is effectively a demurrer to evidence, with this limitation, that the Judge is not at liberty to give judgment for the plaintiff should he think the case made out: in that event the nonsuit is refused, and the cause is put to the jury. What then is the case which a jury might deduce from the evidence before us?

The defendant, Smyth, being pressed for payment by Craig, Bellas and Company, consented to let the molasses in question stand in the yard of his distillery, either as their property, or as collateral security, but on condition that they would take his notes at sixty and ninety days, in lieu of the one-half cash, and the other at sixty days, as he had promised them. He pointed out the molasses, consisting of four hundred hogsheads, to be ascertained by counting them off in rows from a particular point, and in a particular way. He agreed to send them the rum he should distil from the article, to be sold by them and the proceeds applied to his debt; and on these terms, in the first instance, the matter was arranged.

Had it rested there, the plaintiff, or the firm he represents, could not have recovered as in the case of a pawn; for at this time there was no delivery of possession, and consequently no pawn. Indeed, retention of possession was necessarily a part of the arrangement, because it was indispensable to enable the defendant to carry the other parts of it into effect.

But subsequently to the defendant's failure, which occurred shortly afterwards, he sold and agreed to deliver to Craig, Bellas and Company, three hundred and fifty of these hogsheads, as well as twenty-five hogsheads of rum distilled in the mean time from the other fifty, and set apart in a shed, the whole to be gauged and the price fixed at their warehouse by Stevens, a grocer; and this done, the notes previously given were to be delivered up. Next morning he repeated the conditions of the sale, and told the purchasers to go to the yard and mark the hogsheads according to the former method of ascertainment, promising to meet them there, and directing them to haul away without further delivery, should he fail to attend. They accordingly marked both the rum and the molasses with the initials of the firm; the notes were withdrawn from bank for delivery, but handed to the plaintiff who had taken the place of the firm; and they were tendered to the defendant, who refused to receive them or part with the property. The question then is, whether there is enough in these facts to constitute a sale on the general principles of the contract unaffected by positive provisions, such as those of the British Statute of Frauds which are not in force here.

The subject of the sale was sufficiently certain. The rum was in a shed by itself; and the rows of hogsheads containing the molasses were particularly designated. Even without such designation, the lot would have been sufficiently ascertained by the marking, pursuant to the vendor's direction. A sale of articles to be selected by the vendee, is certain enough, after selection made. Here the particular hogsheads had been marked by the vendor's assent, and whether with a view to delivery, it was properly the province of the jury to say; for that the separating of particular goods from a larger quantity, preparatory to actual delivery, is constructive delivery in point of law, was affirmed by Lord Loughborough in the celebrated case of *Lickbarrow* v. *Mason*, (1 *H. B.* 363), and here the hogsheads were marked expressly by the vendor's direction, in order that the vendees might take possession of them without any further act to be done by him. So far then as the fact of delivery is involved in the question, the sale seems pretty clearly to have been executed; but the fact is nevertheless determinable by a jury having regard to the intention of the parties in the marking and separation.

The pinch of the case, however, is to determine whether the vendor was at liberty to stop short before the contract was made complete in all its parts by the ascertainment of the quantity and

price, through the agency of him to whom the gauging and valuation were referred.   If I deliver a chattel on terms that the price of it be subsequently fixed by the vendee and myself, I may balk the contract by insisting on more than he will be willing to give for it, and thus regain the possession of my property with which I had parted only conditionally.   But though the price be not settled by the parties, yet if they agree on a method of settling it irrespectively of anything to be done by themselves, it is the same between them when subsequently settled as if the sum to be given had been an original condition of the bargain; but if the person to whom the naming of it was referred, die in the mean time, or refuse to act, the contract is at an end.   Such a sale is conditional, but not executory like a contract to sell at a day to come, which is complete in itself, though some act remain to be done in pursuance of it: on the contrary, it is a contract, which, being imperfect in itself as regards one of its terms, is to take effect only when the deficiency is supplied by the performance of a condition precedent, the prevention of which by an act of providence or the obstinacy of the agent, defeats the sale entirely. Nor does the property pass by it, in the first instance; for the sale, being on a condition precedent, does not allow the title to vest before the condition has been performed, and therefore if the vendor sell the thing again in the mean time, the second purchaser will take it clear of dispute, though the vendor will be answerable in damages, when the price is named.   All this is text law, and so well understood, both by civilians and common law jurists, that no more is necessary than to refer to Ross on Vendors, (p. 60), where the authorities for it may be consulted.   But here the rum and molasses were to be gauged, and the price fixed at the purchaser's warehouse; an act that was prevented by the vendor's retention of the property in his actual custody.   There is no precedent in the books, for such a case; and it is not easy to determine it satisfactorily on principle.   The difficulty is to comprehend why such an authority, like a submission to an arbitrator, or a letter of attorney, may not be revoked before it has been executed.   It is settled, however, that a power coupled with an interest in the execution of it, is irrevocable; as in *Walsh* v. *Whitcomb*, (3 *Esp. Ca.* 565).   In *Bromley* v. *Holland*, (7 *Vez.* 28), it was said by Lord Eldon, that he would not permit a power of attorney given for a valuable consideration to be revoked; and the principle seems applicable to every case where the power is necessary to effectuate a security.   Was the power given for that purpose in this instance?   It was given to effectuate a sale in discharge of a debt.   If the notes had been actually delivered up, the contract would indisputably have been executed on the part of the vendees; but independent of that, the debt, of which the notes were only the evidences, had been taken as the consideration of the purchase, and the sale may still be said to have been

executed so far as regards tender of those evidences and payment of the purchase money. In addition to this, the vendees had been lulled into a false security by the arrangement, at a time when a vigilant use of every instant in seeking other security was of peculiar value to them; and to suffer the vendor to rescind the contract by a trick, when the time for action had gone by, would be to sanction a fraud. Still it may be asked, how is it to go into effect before performance of the act which was a condition precedent to it? Simply by taking prevention for performance, as is often done in regard to dependent covenants, and directing the jury to allow the vendor a reasonable price for the articles in their estimate of the damages. By this means, the bargain may be carried into effect; and if the vendor should be deprived by it of the benefit of Mr. Stevens's judgment, he will have himself to blame for it.

Judgment reversed, and <em>procedendo</em> awarded.