## Sturgeon Bay Bank, Appellant, *v.* McLaughlin.

*Bills of lading—Draft attached to bill—Title to property—Sale of goods—Title.*

Where a grower of peas borrows money from a bank to be used in the production of his crop, and subsequently assigns to the bank a particular quantity of peas under an agreement by which he delivers to the bank a bill of lading in the name of the bank for the peas in question with a draft attached to the bill of lading payable to the bank, which is to apply the proceeds of the draft to the debt, a purchaser of the peas, with notice of the rights of the bank, who takes the peas and pays the draft, cannot, after such action on his part, attach the fund in the bank as the property of the grower, for damages for an alleged breach of contract of sale by the grower.

Where a bill of lading is attached to a draft as security for its payment, and is transferred for a valuable consideration, it is an appropriation of the property described in the bill.

Argued April 10, 1916.    Appeal, No. 63, April T., 1916, by plaintiff, from judgment of C. P. Erie Co., Sept. T., 1913, No. 143, on verdict for defendant in case of Sturgeon Bay Bank v. John McLaughlin, doing business as the North East Preserving Works.    Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Issue in foreign attachment to determine title to a fund attached.    Before BENSON, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendant.

*Errors assigned,* among others, were (4, 5) instructions quoted in the opinion of the Superior Court and (6) in refusing binding instructions for plaintiff.

*D. R. Cushman,* for appellant, cited: Harrison v. Mora, 150 Pa. 481; Hieskell v. Farmers' & Mechanics' Nat. Bank, 89 Pa. 155; Hoofsmith v. Cope, 6 Wharton 53; Bache v. Philips, 155 Pa. 103; Schumacher v. Eby, 24 Pa. 521; Holmes v. German Security Bank, 87 Pa. 525; Baugh v. Kirkpatrick, 54 Pa. 84.

*S. Y. Rossiter,* of *Thompson & Rossiter,* for appellee.

OPINION BY HENDERSON, J., July 18, 1916:

The defendant, doing business as the Northeast Preserving Works, entered into a contract with the Door County Equity Elevator Company on February 1, 1911, for the purchase of 800 bushels of peas, at $3.00 a bushel. The vendors guaranteed to deliver at least seventy-five per cent. of the quantity contracted for, the contingency of a short crop being taken into consideration. The Equity Elevator Company having retired from that part of its business relating to the sale of seed, made an arrangement under which the Door County Seed Company took over the contract with the defendant in the latter part of April, 1911, the said contract to be executed in accordance with the prior agreement with the Equity Elevator Company. The original contract provided that the title to the peas was to remain in the Equity Elevator Company until they were fully paid for.

In the latter part of August, 1911, the Door County Seed Company borrowed from the plaintiff $7,500.00 to be used in the production of its crop of peas, and agreed verbally at the same time, that shipments of peas in the succeeding fall and winter were to be made with drafts attached to bills of lading, payable to the bank to an amount sufficient to pay the loan, the money to be received on the drafts to be applied on this indebtedness.

In the latter part of the summer or early in the fall the defendant shipped a quantity of bags to the seed company, and 400 bushels of peas were placed in bags and stored in the seed company's warehouse. Early in December the same year the defendant was notified by the seed company that it could only deliver 400 bushels on the contract, whereupon the latter entered into a contract with another seed company for the purchase of 200 bushels at $6.00 per bushel to supply the shortage on the quantity which the Door County Seed Company had undertaken to furnish. It was arranged that the 200 bushels should be shipped at the same time with the 400 bushels.

On December 28th the same year the Door County Seed Company executed a written assignment of all of its right in the 400 bushels of peas to the plaintiff, the money to be received therefor to be applied on the $7,500.00 of indebtedness of the seed company to the bank. Within a few days thereafter the peas were shipped to the defendant on a bill of lading in the name of the bank and consigned to its order at Northeast, Pennsylvania. A draft was drawn on the defendant by the plaintiff at the same time for $1,200.00, the amount of the consignment, to which was attached the bill of lading. Notice was sent to the defendant by the plaintiff of the shipment of the peas, and that a draft was drawn against him in favor of the plaintiff, which had been forwarded to the First National Bank of Northeast, Penna., for collection, and that the latter bank had been instructed not to surrender the bill of lading except upon payment of the draft.

On the arrival of the peas at Northeast the defendant accepted the consignment and paid the draft to the First National Bank at that place, and after having done so, issued a foreign attachment against the Door County Seed Company to recover damages for its failure to deliver the additional 200 bushels, the delivery of which was called for by its contract with the defendant. The issue tried involved the ownership of the money covered

by the attachment. The learned trial judge submitted the case to the jury as set forth in the fourth assignment:

"So it is necessary for you to find from the evidence the real owners of the peas, these 400 bushels, during the first week in December, 1911; and if you find that they were the particular peas bought by the Door County Seed Company for the fulfillment of its contract with the Northeast Preserving Company and had been set aside to them, and the rights of the preserving company had attached thereto, then it would be proper for you to find a verdict for the defendant in this case."

The same view was repeated in the language contained in the sixth assignment:

"However, if the peas were purchased and owned by the Door County Seed Company and had been set aside, placed in containers belonging to the Northeast Preserving Works, and were their particular property at that time, then your verdict should be for the defendant."

In thus charging, the attention of the jury was directed to a subject which might have been important if the controversy were between the defendant and the seed company, but the matter to be determined was, whether the fund in the bank was the property of the seed company, and therefore subject to attachment at the suit of the defendant.

It is not disputed that the seed company was largely indebted to the plaintiff at the time this indebtedness was contracted, and that an arrangement was made between that company and the bank that the proceeds of future sales made by the seed company were to be applied to the liquidation of the bank indebtedness. Nor is it disputed that the shipment of the 400 bushels of peas and the amount due thereon was assigned in writing to the plaintiff to apply on its indebtedness.

The time limited for the performance by the seed company of its contract with the defendant was February 1, 1912; and the assignment of the seed company's interest

in the 400 bushels of peas to the plaintiff was made December 28, 1911.  It is admitted that the defendant paid no money to the seed company on his contract with it; the most that is claimed is that on an agreement to deliver at least 600 bushels the seed company set apart 400 bushels for the defendant.

It will be observed, however, that it was expressly agreed between them that the title to the peas contracted for was to remain in the vendor until the purchase-price was paid, and the possession of the peas remained in the seed company until the date of shipment.  That the plaintiff under this state of facts acquired a right to the purchase-price of the peas we think is clear.  Whether the interest of the plaintiff was that of an owner of the merchandise, or of the purchase-money to be paid on delivery to the defendant, is not important.  There not only was no agreement to deliver without the payment of the price, but on the contrary, there was an express agreement that delivery should not take place until the purchase-money was paid.  It was therefore the clear understanding that the title should remain in the seed company until it was reimbursed.

The vesting of the title depends on the intention of the parties, to be derived from the contract, and its circumstances.  An actual setting aside of goods is only a circumstance from which the intention may be inferred as a matter of fact: Smyth v. Craig, 3 W. & S. 14; Sumner v. Hamlet, 12 Pick. 76; Winslow Lanier & Co. v. Leonard, 24 Pa. 14.  The vendor company retained the right of disposal of the property therefore, and could transfer it to its creditor.  When, therefore, the bank, with the authority of the seed company, obtained a bill of lading for the merchandise, it became the owner thereof and had a complete right to retain it until payment was made.  The plaintiff had no knowledge of the default of the seed company, if that were a matter of consequence, and had an undoubted right to protect its indebtedness through the contract made by the seed

company with the defendant.   The bill of lading was evidence of an appropriation of the proceeds of the sale of the property contained therein.   The defendant had notice in advance of this appropriation, and having accepted the merchandise and paid the draft, he cannot now be heard to say that the proceeds of the draft belonged to some other person than the payee.

It was held in Holmes v. German Security Bank, 87 Pa. 525, that where a bill of lading is attached to a draft as security for its payment, and is transferred for a valuable consideration, it is an appropriation of the property contained in the bill; and this was approved in Holmes v. Bailey, 92 Pa. 57.

Whether the plaintiff be regarded as the owner of the seed or of a lien for the purchase-price, the bill of lading held by it was a symbol of property in the peas, and operated in law as a delivery of the merchandise to it with the constructive custody, which served all purposes of an actual possession; and this continued until there was a complete delivery of the property pursuant to the bill of lading: Hieskell v. Farmers & Mech. Nat. Bank, 89 Pa. 155; Dows v. National Exchange Bank, 91 U. S. 618; Farmers & Mech. Nat. Bank v. Logan, 74 N. Y. 568; Lickbarrow v. Mason, 2 Term Rep. 63; Turner v. Trustees Liverpool Docks, 16 Exch. 543; Schmertz v. Dwyer, 53 Pa. 335; Harrison v. Mora, 150 Pa. 481.

As between the plaintiff and the seed company there can be no doubt that the proceeds of the peas belonged to the former, and when this fund was secured to the plaintiff by a bill of lading, it was put out of the reach of the defendant as a creditor of the seed company.   The very object of taking the bill of lading in the name of the bank was to show that the plaintiff retained the control and right to dispose of the property, so that the right might be used to procure the money for the bank.   The property was the means to be used for getting the money to discharge the indebtedness pro tanto.

Surrender of possession was refused until the right

of the bank was satisfied and the funds received by the First National Bank in payment of the debt became the fund of the plaintiff. Whether the attitude of the plaintiff under the assignment from the seed company be that of an owner of the property or of a lien for advances, its title as the holder of the bill of lading is not affected by an attachment issued at the suit of a creditor of the seed company.

On the undisputed evidence presented at the trial the plaintiff was entitled to an affirmation of its sixth point.

The judgment is therefore reversed and the record remitted with a venire facias de novo.