## Holmes *versus* Bailey.

1. Where a bill of lading is attached to a draft as security for its payment, and transferred for a valuable consideration, it is an appropriation of the property contained in the bill, whether it is endorsed or not. Nor is it material that the draft is for more than the proceeds of the shipment.

2. Holmes v. The German Security Bank, 6 Norris 525, followed.

November 5th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1879, No. 70.

Assumpsit by B. K. Bailey, for use of W. P. Stallings, against William Holmes and others, trading as Holmes, Lafferty & Co.

On the 9th of October 1876, Stallings, the equitable plaintiff, sold to Bailey, the legal plaintiff, twenty-two head of cattle for $1099.45, and on the same day Bailey shipped seventeen of these cattle at Louisville, Kentucky, by the Louisville, Cincinnati & Lexington Railroad Company, to the defendants, who are live-stock

[Holmes *v.* Bailey.]

commission merchants at Pittsburgh, Pennsylvania, and received from said railroad company a bill of lading for the said seventeen head. On the same day Bailey also drew a draft on the defendants for the price of said cattle ($1099.45), payable to the order of Stallings five days after sight, which draft he delivered to Stallings together with the said bill of lading, and Stallings caused the draft with the bill of lading accompanying it to be sent to the defendants for payment, and they were presented to them on the 11th of October 1876, but defendants refused to accept the draft, and it was thereupon protested for non-acceptance. On the next day the defendants received the said seventeen head of cattle and sold the same for $883.17, being the net proceeds after payment of charges for transportation, &c.

On the 9th of October 1876, the day of the shipment of the said seventeen head, the remaining five of the twenty-two head purchased by Bailey from Stallings, were shipped by Bailey in a separate car with eleven head which Bailey had bought from Brown & Jones, of Louisville, Kentucky, and these sixteen were all consigned in the name of Brown & Jones to the defendants, who sold the same on the 12th of October 1876, and received from the sale of the said five head purchased from Stallings $284.07 as the net proceeds thereof.

On the 19th of said month, the said draft was again presented to the defendants for payment, which being refused, it was thereupon protested for non-payment.

The plaintiff maintained that the delivery to him of said bill of lading with the draft payable to his order was an assignment of a sufficient amount of the proceeds of the sale of the said twenty-two head of cattle to pay the amount of said draft, and that the presentation of the draft to the defendants before the delivery of the cattle was notice of such assignment, and that they were then bound to retain and apply the proceeds thereof to the payment of said draft.

On part of the defendants, however, it was proved and not contradicted that on the 12th of October 1876, when all these cattle were received by them (the seventeen head being in one car shipped in the name of B. K. Bailey, and the sixteen in another car shipped in the name of Brown & Jones), the defendants also received a letter from Bailey, dated the 10th of the same month, notifying them of the shipment of the said two car-loads of cattle, and that eleven head had been purchased from Brown & Jones, with instructions to pay a draft drawn by Brown & Jones on defendants on account of the cattle bought of them and out of the balance of the proceeds to pay whatever he (Bailey) was then owing the defendants, and to remit to him the remainder.

In pursuance of these instructions, the defendants accordingly applied the proceeds of the cattle as follows:

[Holmes v. Bailey.]

On the 13th of October 1876, to balance due from B.
K. Bailey to defendants on a former account, . . $387.90
October 14th 1876, to payment of draft of Brown &
Jones on defendants, . . . . . . 647.20
October 14th and 16th 1876, to remittance to B. K.
Bailey as per his direction, . . . . . 780.21

Which sums, amounting in all to $1815.31, exhausted the entire proceeds of the said two car-loads, and were applied and paid out in obedience to the aforesaid letter of instructions from Bailey before said draft was presented for payment. It further appeared that when the draft was presented for acceptance, not only was there nothing in defendants' hands due or belonging to Bailey, but the latter was then indebted to defendants in the sum of $387.90 on account of prior transactions.

At the trial, before Stowe, P. J., the plaintiff, inter alia, submitted the following point, to which is subjoined the answer of the court:

3. That the draft drawn by Bailey to the order of Stallings, for $1099.45 at five days' sight, and addressed to the defendants, being for value, to wit: the price of said twenty-two head of cattle, the delivery of the bill of lading, at the same time, by said Bailey to said Stallings, as security for said draft, transferred the right of property in the seventeen cattle embraced in said bill of lading, or the proceeds of the sales thereof, to said Stallings, [and if the jury believe that five of said cattle, being the residue of the cattle purchased from Stallings by Bailey, were shipped in the name of Brown & Jones, and the same were received by the defendants, and they knew they were part of the Bailey shipment for which said draft was drawn, the plaintiff is entitled to recover the full amount of his claim].

Ans. "This point is double, and refused as a whole. The first part to the bracket is affirmed; the latter part within brackets is refused."

The following were the points of defendants with the answers of the court:

1. That the bill of lading attached to the draft in suit being for only seventeen head of the cattle shipped to defendants, and the proceeds thereof being only $883.17 (less by $216.28 than the amount of said draft) the defendants were not bound to apply the same towards the payment of the indebtedness represented by said draft.

Ans. "Refused."

2. That as the net proceeds of the twenty-two cattle bought by Bailey of Stallings was considerably in excess of the amount of said draft (the difference being $67.74), the said draft with the bill of lading accompanying it, did not operate as an assignment of a

[Holmes *v.* Bailey.]

sufficient amount of said proceeds to entitle Stallings to recover the same from the defendants in this action, without their consent and in the absence of an acceptance or agreement on their part to pay it.

Ans. " This is affirmed. It did not appropriate the proceeds of the twenty-two head of cattle, but the draft with the bill of lading for seventeen head was an appropriation of the net proceeds of said seventeen head of cattle."

3. That if the jury find that the defendants, after the receipt of the cattle in dispute, applied the proceeds thereof as directed by B. K. Bailey in his letter of October 10th 1876, and that such application was made before the presentation of said draft on the 19th of said month, then the verdict should be for the defendants.

Ans. " Refused."

4. That under all the evidence in the case the verdict should be for the defendants.

Ans. " Refused."

Verdict for plaintiff for the net proceeds of the sale of the seventeen cattle, with interest. Defendants took this writ, and alleged that the court erred in the answers to the above points.

*Thomas C. Lazear,* for plaintiffs in error.—The bill of lading attached to the draft was not even endorsed, nor was there any writing on it which purported to be an assignment of its contents. That the draft, of itself, did not amount to an appropriation, so as to entitle the plaintiff to recover in this action, we refer to Hopkins *v.* Beebe, 2 Casey 85, in which it was said, that a bill of exchange does not, *propria vigore,* vest in the payee a title to the effects sent to meet it, or give the payee a lien upon such effects, so that he can demand them or their proceeds. To the same effect is Farmers' and Mechanics' Ins. Co. *v.* Simmons, 6 Casey 299 ; Mrs. Greenfield's Estate, 12 Harris 240 ; Lloyd *v.* McCaffrey, 10 Wright 410 ; First Nat. Bank of Mt. Joy *v.* Gish, 22 P. F. Smith 13.

But, again, it is also an undisputed fact in the case, that the draft amounted to much more than the proceeds of the cattle embraced in the bill of lading which accompanied it. It is submitted that the case in this respect, is analogous to that of a bank check for which the drawer has not provided sufficient funds to pay the whole amount.

A bank is not bound to pay a part of a check when it has not funds for the whole : 2 Pars. on Notes and Bills 78 ; In re Brown, 2 Story 502, 516.

*William L. Chalfant,* for defendant in error.—Holmes, Lafferty & Co. *v.* German Security Bank, 6 Norris 525, rules this case. The function of the draft, with the bill of lading attached, was

[Holmes *v.* Bailey.]

to transfer the seventeen cattle embraced in the bill of lading, or the proceeds thereof, when they were sold, no difference whether the draft included other cattle in another bill of lading or not.

A general endorsement, without anything further, might have transferred to Stallings the proceeds of the draft itself, in which case the defence to Stallings that the draft was for more than the proceeds of the cattle transferred to Stallings by the bill of lading, might have been available. But the attachment of the bill of lading for the seventeen cattle to the draft qualified and limited the appropriation to the proceeds of the seventeen cattle included in the bill of lading. The property or the proceeds thereof belonged to Stallings, and the transaction raised such privity as would sustain an action for money had and received.

The judgment of the Supreme Court was entered November 17th 1879,

PER CURIAM.—This case, we think, cannot be distinguished from Holmes *v.* German Security Bank, 6 Norris 525. It was held in that case that, where a bill of lading is attached to a draft as security for its payment, and transferred for a valuable consideration, it is an appropriation of the property contained in the bill whether it is endorsed or not. We do not see that the fact that the draft in this case was for more than the proceeds of the shipment makes any difference. The consignee was entitled to a receipt from the holder as his voucher, and an endorsement of the part payment on the draft which would have made him perfectly secure.

Judgment affirmed.