## Gonser *versus* Smith.

1. A writ of error to a reference under the Act of April 22d, 1874, brings up only questions of law arising on bills of exceptions to the rulings of the judge; his conclusions on the facts of the case must be regarded in the same manner as the verdict of a jury. The Supreme Court will not reinvestigate the facts as found by the judicial referee.

2. Jamison *v.* Collins, 2 Norris, 359; Lee *v.* Keys, 7 Norris, 175; Brown *v.* Dempsey, 14 Norris, 243, followed.

3. Though the right of a vendor to rescind a sale, because of the failure of the vendee, or his refusal to pay, continues so long as any weighing, measuring, or other things remain to be done on his part, yet this test does not apply to the question of the vesting of the title in a case where the vendor has no cause of rescission.

4. Where the lawful form of contracting is preserved, the vesting of the title always depends on the intention of the parties, to be derived from the contract and its circumstances; and actual delivery, weighing and setting aside are only circumstances from which the intention may be inferred.

5. It is of no consequence in the way of passing title to personal property, that the quantity of it is estimated, and full settlement for the same is deferred, until the quantity is exactly ascertained, upon shipment of it.

6. Winslow, Lanier & Co. *v.* Leonard, 12 Harris, 14, followed.

February 16th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lycoming county:* Of January Term 1886, No. 310.

Assumpsit by Lewis S. Smith and John W. Rissel who survived Daniel Clapp, late trading under the firm name of D. Clapp & Co., against John R. Gonser. Plea non assumpsit, payment, set off, with leave.

By agreement of the parties, trial by jury was waived, and the case was referred to CUMMIN, P. J., under the Act of April 22d, 1874.

The following are the findings of law and of fact by the court:

1. The plaintiffs were extensive manufacturers of lumber at Muncy, in this county, where their mill and lumber yard were located. The defendant was an extensive dealer in lumber, and resided in Kutztown, Berks county.

2. In October, 1879, the defendant came to the plaintiffs' place of business to buy lumber. One of the plaintiffs, now deceased, went with the defendant into the lumber yard, and

after examination the defendant selected six or seven piles and parts of piles of different grades of lumber, at prices per thousand then agreed upon. The piles thus selected were then marked with the name of the defendant, " J. R. Gonser." The exact amount contained in the piles was not known, but for the purposes of the sale a careful estimate was made by the parties. A person was called up to witness the sale. Shortly afterwards the defendant reduced to writing his understanding of the sale, and sent the following bill of sale to the plaintiffs to be executed by them and returned to him, which was accordingly done:

MUNCY, Oct. 17th, 1879.

We hereby agree to sell and have sold to John R. Gonser, of Kutztown, Pa., and agree to deliver on board of cars at our siding all such lumber as hereinafter mentioned whenever said Gonser may order and direct to have the same loaded, within a reasonable time given for loading, all white pine lumber, being the same, or more, as mentioned as follows, to wit:

| | |
|---|---:|
| 1 pile 5-4, about 20,000 feet, called shop, at $20.50 | $410.00 |
| 1 pile 6-4, about 15,000 feet, called shop, at $20.50 | 307.50 |
| $1\frac{1}{4}$ pile 4-4, about 20,000 feet, called barn, at $14 | 280.00 |
| $1\frac{1}{2}$ pile 4-4, about 30,000 feet, called culls, at $11 | 330.00 |
| The whole amounting to about | $1,327.50 |

more or less, whatever it may be, to be paid by note, dated November 5th, five months after date, due on 1st of April, 1880, for which we hereby acknowledge receipt of said John R. Gonser's note, as above stated, for thirteen hundred dollars; also ten dollars in cash, as part payment on above balance, whatever it may be, to be settled likewise as soon as the correct amount can be arrived at.

(Signed)                              D. CLAPP & CO.

3. In December, 1879, the defendant again came to the plaintiffs' place of business to buy more lumber. Terms of sale were agreed upon at the office in the evening, and the next day the defendant and one of the plaintiffs went on the yard, and, after careful inspection and examination, the defendant selected the piles of lumber he wanted. The piles so selected were then marked " J. R. Gonser." The exact amount contained in the piles was not known, but for the purposes of the sale a careful estimate was made by the parties. Some time afterwards, the defendant reduced to writing his understanding of the sale, and sent the following bill of sale to the plaintiffs, to be executed by them and returned to him, which was accordingly done:

KUTZTOWN, Jan. 6, 1880.

We hereby agree to sell and have sold to John R. Gonser, of Kutztown, Pa., and agree to deliver on board of car at our siding, all such lumber hereinafter mentioned whenever said Gonser may order and direct to have the same loaded, all white pine lumber, being the same, more or less, mentioned as follows, to wit: Four piles of 12-inch stock culls, about 100,000 feet, all that the four piles contain, whatever culls or barn that are in the piles marked may contain, at $14 per thousand feet, $1,400; also one pile 6-4 selects and better, containing about 14,000 feet, more or less, at $30, $420.00; total amounts to about $1,820.00, more or less, whatever it may be, to be paid by note, dated Jan. 5th, 1880, four months after date, due on the 5th of May, 1880, for which we hereby acknowledge receipt of his note due May 5th, 1880, for $1,000 (one thousand dollars), as part payment on the above, balance to be paid in the same way as soon as the exact amount can be arrived at, which becomes all due May 5th, 1880.

(Signed)            D. CLAPP & CO.

4. Subsequently, from time to time, portions of this lumber were shipped as ordered by the defendant, and payments were made by him of the notes which he had given as part payment of the same. The defendant pointed out to another member of the firm plaintiff, and also to their employee, the piles of lumber he had bought, speaking of them as *his* lumber, saying, "this is my pile," "that is my pile," etc. In his letters the defendant always ordered *his* lumber to be shipped, and gave directions how he wanted *his* lumber covered to protect it from the weather. When plaintiffs sold lumber of same grade to another party, defendant refused to allow them to fill the order from his lumber, unless they would replace the quantity as he might desire. Thus the defendant from the dates of the sales exercised acts of ownership of the lumber sold.

5. April 10th, 1880, a destructive fire broke out in the plaintiffs' lumber yard, and all the lumber therein was destroyed, including what remained of the lumber sold to the defendant. Neither party had any insurance on the lumber sold.

6. The plaintiffs, alleging that the transactions were and were intended to be perfect sales on the days named in the bills of sale, and that the title to the lumber sold then rested in the defendant, now claim from him the balance of the consideration named in the bills of sale. The defendant, alleging that the transactions were and were intended to be executory agreements to sell lumber; that the lumber destroyed by fire was in the same condition as when the agreements were made;

that the exact quantity of lumber sold, and the exact amount of the whole consideration to be paid, has never been ascertained and fixed, now claims that he has overpaid the plaintiffs for all the lumber he has received from them.

7. The statements of accounts submitted by the parties include other sales and shipments by the plaintiffs to the defendant. At the argument of this case, it was conceded that if plaintiffs were entitled to be paid for the lumber in question, which, as destroyed by fire, the balance due from the defendant would be $1,666.10, with interest from May 5th, 1880. And that, if plaintiffs were not entitled to be paid for the said lumber, then there would be a balance due from the plaintiffs to the defendant of $376.60, with interest from April 6th, 1880.

8. The only question in dispute in this case is which of the parties shall bear the loss of the lumber sold by the plaintiffs to the defendant, which remained on plaintiffs' lumber yard, and was destroyed by fire April 10th, 1880. This question is to be answered by ascertaining from all the evidence whose lumber it was at the time of the fire. If at that time the lumber was the property of the plaintiffs they must bear the loss. If it was the property of the defendant, he must bear the loss. The loss follows the title.

9. In Bigley v. Risher, 13 P. F. S., 155, a sale is thus defined: "Sale," said Mr. Justice WAYNE in Williamson v. Berry, 8 Howe, 544, "is a word of precise legal import in law and in equity. It means at all times a contract between parties to pass rights of property for money which the buyer pays or promises to pay to the seller for the thing bought and sold:" Huthmacher v. Harris' Admr., 2 Wright, 498; Bowen et al. v. Burk et al., 1 Harris, 148.

In Benjamin on Sales, 4 Am. Ed., Vol. 1, p. 315, the law of England on the sale of a chattel, as declared by PARK, J., in Dixon v. Yates, 5 Ad. & E., 313–340, is thus stated: "I take it to be clear that by the law of England the sale of a specific chattel passes the property in it to the vendee without delivery. . . . . Where there is a sale of goods, generally, no property in them passes till delivery, because until then the very goods sold are not ascertained. But where by the contract itself the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take that specific chattel and to pay the stipulated price, the parties are then in the same situation as they would be after a delivery of goods in pursuance of a general contract. The very appropriation of the chattel is equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel and to pay the price is equivalent to his accepting possession. The effect of the contract, there-

fore, .s to vest the property in the bargainee." In the same volume, p. 330, the rule deducible from the American decisions is thus stated: "In the absence of an express agreement, the intent that title shall pass at once by the contract, although the seller is to deliver, is inferred where the buyer is to give notice of time and place of delivery, where payment in full is made, where the buyer employs the seller to remove the property, or where there is other evidence that the continued possession of the seller is merely for the convenience of the buyer, or that the removal of the goods is made by the seller as agent for the buyer."

10. In this state, as between vendor and vendee, I find the law to be as follows: "If any part of the price is paid down, if it be but a penny, or any portion of the goods delivered, by way of earnest, the property of the goods is absolutely bound by it, and the vendee may recover the goods by action as well as the vendor may the price of them:" GIBSON, C. J., in Hazzard v. Hamlin, 5 Watts, 202.

Property in a chattel is not changed by a sale and delivery on conditions to be afterwards performed if they are not performed, but where the delivery is absolute, and the bargain is perfect or capable of being made so by reference to something else or an arbiter, the ownership is transferred. It is certain enough when the price can be obtained by mere computation; therefore, a sale of a large raft at so much per 1000 feet, and delivery to the buyer, changed the property, though it was to be counted, and that was not done, there being nothing more to be done by the seller: Opinion by GIBSON, C. J., in Scott v. Wells, 6 W. & S., 357.

In Winslow, Lanier & Co. v. Leonard, 12 Harris, 14, which is the leading case in this state, and seems to be a leading case in all the states and cited with approval in England, it was decided as follows:

"Though the right of a vendor of goods to rescind the sale, because of the failure of the vendee, or of his refusal to pay, continues so long as any weighing, measuring or other thing remains to be done on his part, yet this test does not apply to the question of the vesting of the title in a case where the vendor has no cause of rescission. Weighing and marking goods and setting them aside are evidence of a perfect sale, so as to vest the title in the vendee, but not proof of it nor essential to it. As between vendor and vendee it is specification and not delivery that is necessary to the vesting of the title. That the bargain is by words in past or present time is not conclusive evidence of a perfect sale; for if it appears that the vendor did not then own the article contracted for, or that it was not yet in existence or not selected out of a lot of similar articles,

[Gonser *v.* Smith.]

then the subject matter of the contract remains undefined, and it is incompatible with the very nature of things to call it a perfect sale. Where a contract of sale is in lawful form the vesting of the title depends upon the intention of the parties to be derived from the contract and its circumstances."

11. In the case at bar the plaintiffs were the owners of lumber sold; the thing sold was in existence and was selected out of a lot of similar articles, was distinctly marked and designated; the exact quantity being unknown, a careful estimate was made by the parties and substituted for the purpose of the sale, so that a full price might be stated. The defendant (vendee) prepared bills of sale which were executed by the plaintiffs, in which appropriate words were used to specify and designate the subject matter of the sale, and to make a perfect sale whereby the title would pass to the vendee ; the defendant paid the earnest money and afterwards paid the notes as they became due; from time to time he ordered portions of his lumber shipped to his customers, which was done, and exercised and continued to exercise unquestioned rights of ownership over the lumber sold up to the time it was destroyed.

12. After careful examination and consideration of the law and all the evidence in this case, I arrive at the conclusion and find that the title to the lumber in question vested and was intended by all the parties to vest in the defendant at the time the sales were consummated. The circumstances that the plaintiff was to load the lumber on the cars as ordered by the defendant, and that if the estimate of quantity was afterwards found to be incorrect, money was to be paid or refunded, as the case might be, in no way affect this intention of the parties that the title should vest in the defendant. It may also be observed here that it does not appear in the evidence how the exact amount of lumber sold was to be ascertained.

13. The five points of law submitted by counsel for the defendant, they are all refused, except the first, which is affirmed.

14. I find for the plaintiffs the sum of one thousand six hundred and sixty-six 10-100 dollars, with interest from May 5th, 1880, making a total of two thousand two hundred and thirty-seven 57-100 dollars ($2,237.57).

15. It is ordered that judgment be entered in this case in favor of the plaintiffs and against the defendant, for the sum of two thousand two hundred and thirty-seven 57-100 dollars, unless exceptions are filed *sec. reg.*

The following are the points of law submitted by counsel for the defendant:

1. That the court as matter of law must give a construction to the two contracts dated Oct. 17th, 1879, and Jan. 6th, 1880.

[Gonser *v.* Smith.]

2. That both of said contracts are executory.

3. That both of the said contracts provide that the lumber was to remain upon the mill yard of the plaintiffs, that the same was to be shipped upon the order of the defendant, and that the amount to be paid by him for the said lumber was to be ascertained only when the said lumber was shipped according to his orders.

4. That when said lumber was destroyed by fire it was in precisely the same position as when the defendant purchased it. It was in the same piles and parts of piles, it had not been shipped, and neither the quantity of lumber nor the amount to be paid therefor had been ascertained, nor could they be ascertained until the lumber was shipped, as provided for by the said contracts. The risk, therefore, remained with the vendors, and they cannot recover in this action.

5. That under the law and the evidence the plaintiffs are not entitled to recover, and the judgment must be for the defendant.

The defendant filed exceptions to the findings of the court, viz.: That the court erred in refusing to find as matters of law the points submitted by counsel for the defendant, and he also excepted to the twelfth finding of the court. The court overruled the said exceptions and judgment was thereupon entered for the plaintiff in the sum of $2,237.57. The defendant thereupon took this writ assigning for error the action of the court in not finding as matters of law the said points submitted by the defendant and in finding the twelfth finding of the court, and in overruling the defendant's exceptions.

*Henry C. Parsons*, for plaintiff in error.—It is difficult to see how the case of Nicholson *v.* Taylor, 7 Casey, 130, can be distinguished from the one at bar.

In both, the contracts were in writing, both show that the counting of the lumber remained to be done before the amount of the lumber or of the purchase money could be ascertained, and yet the court below disregarded this well-considered case and gave judgment for the vendors, who guessed at the amount due them.

But the case of Nicholson *v.* Taylor was not the first to decide this principle, either in Pennsylvania or in England. In Scott *v.* Wells, 6 W. & S., 368, says GIBSON, C. J.: "There is no lack of authority for the principle that while anything remains to be done, by the terms of the contract, to ascertain the price, the property remains at the risk of the vendor."

That is exactly what is contended for in this case. The terms of the contracts, provide for a delivery of the lumber on the cars by the vendors, and then and then only could the balance of the purchase money be "arrived at." To the same

effect are: Thompson *v.* Franks, 1 Wright, 329; Nesbit *v.*
Burry, 1 Casey, 210; Hanson *v.* Meyer, 6 East, 558; Shepley
*v.* Davis, 5 Taunt., 617.

*J. A. Beeber*, for defendants in error.—The findings of fact
by the court below, when trial by jury is waived, will not
be disturbed by this court: Brown, Early & Co. *v.* The Sus-
quehanna Boom Co., 17 Weekly Notes, 103; Jamison *v.* Col-
lins, 2 Norris, 359; Lee *v.* Keys, 7 Norris, 175; Brown *v.*
Dempsey, 14 Norris, 243.

In the leading case of Winslow, Lanier & Co. *v.* Leonard,
12 Harris, 14, the principle controlling the rights of vendor
and vendee is decided as follows: "Though the right of a
vendor of goods to rescind the sale, because of the failure of
the vendee, or of his refusal to pay, continues so long as any
weighing, measuring or other thing remains to be done on his
part, yet this test does not apply to the question of the vest-
ing of the title in a case where a vendor has no cause of res-
cission. Weighing and marking goods and setting them aside
are evidence of a perfect sale, so as to vest the title in the
vendee, but not proof of it nor essential to it. As between
vendor and vendee it is specification and not delivery that is
necessary to the vesting of the title. That the bargain is by
words in past or present time, is not conclusive evidence of a
perfect sale; for if it appears that the vendor did not then own
the article contracted for, or that it was not yet in existence
or not selected out of a lot of similar articles, then the sub-
ject matter of the contract remains undefined, and it is incom-
patible with the very nature of things to call it a perfect sale.
Where a contract of sale is in lawful form the vesting of the
title depends upon the intention of the parties, to be derived
from the contract and its circumstances.

The principle established in Winslow *v.* Leonard, above
cited, is affirmed and relied upon in the following cases: Mc-
Candlish *v.* Newman, 10 Harris, 465; Nicholson *v.* Taylor, 7
Casey, 130; White *v.* Welsh, 2 Wright, 420; Penna. R. R.
Co. *v.* Hughes, 3 Wright, 527; Rochester Oil Co. *v.* Hughey,
6 Smith, 325; Rietz's Appeal, 14 Smith, 165, and has never
been modified or overruled.

Mr. Justice GORDON delivered the opinion of the court,
March 14th, 1887.

In Lee *v.* Keys, 88 Pa., 175, we held, following Jamison *v.*
Collins, 2 Nor., 359, that a writ of error to a reference under
the Act of 22d April, 1874, brought up only questions of law
arising on bills of exceptions to the rulings of the judge, and
that his conclusions on the facts of the case must be regarded

[Gonser *v.* Smith.]

in the same manner as the verdict of a jury. This case has since been followed by Brown *v.* Dempsey, 14 Nor., 243, so that we may regard it as established that this court will not reinvestigate the facts as found by the judicial referee. Such being the case, our task in the matter in hand is an easy one.

According to the finding of the learned judge we understand that the plaintiffs were the owners of the lumber sold; that this lumber was actually manufactured and placed in separate piles; that it was selected by the defendant, and distinctly marked and designated. As the exact quantity was unknown, an estimate was made by the parties for the purposes of sale; that bills of sale were prepared by the vendee, and were signed by the vendors, in which appropriate words were used to specify and designate the subject matter of the sale, and to perfect the sale and title to the vendee. The defendant paid the earnest money; gave his notes for the estimated amounts, and paid them as they became due; that portions of the lumber were shipped, from time to time, on his orders, and that he exercised, and continued to exercise, unquestionable rights of ownership over the lumber up to the time it was destroyed by fire.

What we have here stated is the substance of the findings, and an examination of the evidence satisfies us that they were warranted by the testimony. Now, if there be any doubt as to the law governing this case it may be dissipated by reference to Winslow, Lannier & Co. *v.* Leonard, 24 Pa., 14, where it was held, that though the right of a vendor to rescind a sale, because of the failure of the vendee, or his refusal to pay, continues so long as any weighing, measuring or other thing remains to be done on his part, yet this test does not apply to the question of the vesting of the title in a case where the vendor has no cause of rescission. It is further said in this same case, that where the lawful form of contracting is pursued, the vesting of the title always depends on the intention of the parties to be derived from the contract, and its circumstances, and that actual delivery, weighing and setting aside are only circumstances from which the intention may be inferred. When these undoubted rules of law are applied to the defendant's contention it is found to have no substantial foundation. Not only selection and marking of the lumber, but the bills of sale, and the delivery of the defendant's notes expressed the fixed intention of the parties to make the sale a present, and positive one.

Nothing of any materiality remained to be done; the delivery was complete when the piles were estimated, and marked to Gonser, and that they deferred a full settlement until the quantity was exactly ascertained upon shipment, was of no

consequence in the way of passing title. That the plaintiffs may have had the right to have refused to allow the boards to be taken from their yard, had the defendant neglected to comply with his contract, is possible, but as there was no such neglect, and therefore, no necessity for the exercise of such right, we need not discuss what might have been under different circumstances. From what we have before us, we are free to say that the rulings and judgment of the court below were in all particulars correct.

The judgment is affirmed.

MERCUR, C. J., dissents as something remained to be done according to the terms of the contract.