# Fee, Appellant, *v*. Emporium Lumber Company.

*Contracts—Construction—Course of dealing—Acts of parties—Ambiguous terms—Abrogation.*

1. In the case of an executory contract the practical interpretation of it by the parties is entitled to great if not controlling influence in its construction by the courts; but it would be an unwarrantable expansion of this principle to imply from acts of the parties an irrevocable abrogation or alteration of an unambiguous term in a contract unless those acts clearly show that the parties intended such irrevocable abrogation or alteration, or they furnish ground for equitable estoppel.

*Contract—Sale—Delivery—Passing of title—Marking logs.*

2. As between seller and buyer there may be such delivery as will vest the property in the latter though by the terms of the contract there may be something to be done afterwards to ascertain the exact quantity to be paid for at the price fixed by the contract.

3. The actual delivery to the vendee or his agent which puts an end to the transitus or state of passage may be at the vendee's own warehouse, or at a place which he uses as his own though belonging to another, for the deposit of goods, or at a place where he means the goods to remain until a fresh destination is communicated to them by orders from himself.

4. Where goods are sold and delivered to be paid for on the happening of a certain event, the vendor will not be deprived of his right to recover merely because the event on which payment is to be made has, by accident, become impossible. Upon the same principle when the quantity is to be ascertained by measurement at a particular time or place, or in a particular manner, if such measurement becomes impossible, nevertheless the quantity may be ascertained in some other manner.

5. In an action to recover for logs alleged to have been sold and delivered it appeared that there was a written agreement by which the plaintiffs agreed to sell to the defendant, and the latter agreed to buy at a certain rate per 1,000 feet all of the logs on certain lands which the plaintiffs "may see fit to deliver" to a certain railroad named. Settlements were to be made on the first of the month for the logs delivered the previous month. The logs were to be scaled by two men appointed by the plaintiffs and one appointed by the defendant, or if defendant failed to send a scaler, plaintiffs were to scale and mark the number of feet, on the end of each log as scaled, and make due report thereof to defendant. The defendant never furnished a scaler. Certain of the logs were duly scaled by plaintiffs, and it appeared that

either the defendant or defendant's agent then loaded them on the cars, and these logs were paid for. Certain other logs, however, which were delivered at the railroad by the plaintiffs were burned before they were scaled and marked. *Held* (1) that title to the logs passed from the plaintiffs to the defendant when they were delivered at the railroad, and that the fact that they had not been scaled and marked at the time of the fire was immaterial as affecting the question of title; (2) that the course of dealing of the parties as to logs previously paid for did not warrant an inference that the parties interpreted the unambiguous terms of the contract to mean delivery on board the cars and shipped.

Argued Oct. 24, 1911. Appeal, No. 276, Oct. T., 1910, by plaintiffs, from order of C. P. Potter Co., Sept. T., 1904, No. 126, dismissing exceptions to adjudication in case of Terrence Fee, R. C. Fee and C. P. Fee, doing business under the firm name of Fee Brothers, v. The Emporium Lumber Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit for logs sold and delivered.

Exceptions to adjudication of CAMERON, P. J., specially presiding.

The case was tried without a jury.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*W. K. Swetland,* with him *A. S. Heck,* for appellants.— It seems to us beyond question that the case at bar is absolutely ruled by the case of Diehl v. McCormick, 143 Pa. 584.

Though the right of a vendor of goods to rescind the sale, because of the failure of the vendee or his refusal to pay, continues so long as any weighing, measuring or other thing remains to be done on his part, yet this test does not apply to the question of the vesting of the title in the case where the vendor has no cause of rescission:

Winslow v. Leonard, 24 Pa. 14; Gonser v. Smith, 115 Pa. 452; Dentzel v. Island Park Assn., 229 Pa. 403.

*E. J. Jones,* with him *W. I. Lewis, Archbald F. Jones* and *R. Lewis,* for appellee.—Covenants, like all other contracts, are to be construed according to the intentions of the parties as nearly as the words will permit: Lehigh Coal & Nav. Co. v. Harlan, 27 Pa. 429; Kaul v. Weed, 203 Pa. 586; Mount Pleasant Coal Co. v. R. R. Co., 200 Pa. 434.

We claim that the delivery to the railroad, without the scaling and marking of the logs, as provided for in the contract, could not pass the title, because this contract was clearly executory. It was not an executed contract providing for a sale and as long as anything was to be done by the plaintiffs, under the contract, in connection with the logs, the subject-matter of the contract, the property did not pass, hence when they were burned, the property had not passed to the defendant, and the risk was upon the plaintiffs and the loss is theirs, unfortunate as it may be: Hutchinson v. Com., 82 Pa. 472; Miller v. Seaman, 176 Pa. 291; Elgee Cotton Case, 89 U. S. (22 Wallace) 180; Nicholson v. Taylor, 31 Pa. 128; Sneathen v. Grubbs, 88 Pa. 147; Strong v. Dinniny, 175 Pa. 586; Brown v. Reber, 30 Pa. Superior Ct. 114; Cornell v. Clark, 104 N. Y. 451; Morgan v. King, 28 W. Va. 1; Thompson v. Libby, 35 Minn. 443 (29 N. W. Repr. 150).

OPINION BY RICE, P. J., July 18, 1912:

By writing the plaintiffs agreed to sell to the defendant, and the latter agreed to buy and pay for, at the rate of $12.00 per 1,000 feet of oak and $6.50 per 1,000 feet of the other specified kinds of timber, all of the hard wood and pine logs owned by the former on the Freck lands that they "may see fit to deliver to B. & S. R. R. or its tramway and branches," the total quantity of logs not to exceed 2,000,000 or 3,000,000 feet, and not more than ten per cent thereof to be the beech. According to the

agreement, settlements were to be made on or about the first of each month "for all logs delivered the previous month, on which the second party is to have two months without interest and, if a longer time is allowed by agreement of parties hereto, interest to be allowed on the extra time agreed upon." Then follows this provision: "The logs are to be scaled by two men, one appointed by the first parties, and one appointed by second parties; or, if the second parties fail to send a scaler, first parties are to scale and mark the number of feet on the end of each log as scaled, and number of cars, and number of logs so loaded to be reported to second parties as soon as practicable by first parties. The logs are to be scaled by what is known as the Doyle log rule."

At the date of this contract between 500,000 and 600,000 feet of logs were at the railroad ready for loading, and subsequently large quantities were cut and hauled to the railroad. As these logs were being loaded from time to time on the cars by the Goodyear Lumber Company they were scaled by the plaintiffs' scaler, the defendant sending no scaler, and the number of feet in each log was marked thereon. Bills for these logs, showing the number of logs loaded, the kind of logs, and the number of feet they scaled, were sent by the plaintiffs to the defendant, and were paid. These logs are not in controversy; we refer to the course of dealing regarding them because, as will be seen later, it is set up as having an important bearing on the interpretation of the contract. Nor is there any controversy as to the three small shipments, amounting, less a payment of $80.18, to $171.07, for which the court gave judgment in plaintiffs' favor.

The sole controversy on this appeal is as to the liability of the defendant, at the rate of $6.50 per 1,000 feet, for 3,843 logs, containing 349,363 feet, which the court found the plaintiffs hauled to and placed along the B. & S. R. R. pursuant to their contract, at least six weeks before the fire, and were burned upon the banking grounds in the month of June, 1899. The ground upon which

the court based its decision that the plaintiffs could not recover for these logs is clearly set forth in the following excerpt from the opinion of the learned judge specially presiding: "Adopting the interpretation of the contract shown by the way they transacted the business under it, the conclusion is irresistible that the transaction as to the logs was not completed so far as the plaintiffs were concerned until they had scaled them, marked the quantity in each log on the end of the log, sent the bills to the defendant and the number of cars. Only when this was done could the plaintiffs call for a settlement for the logs so shipped the previous month. Until that was done the title to the logs did not pass to the defendant. The plaintiffs still had possession and title." The course of dealing between parties to an executory contract, the terms of which are equivocal or doubtful, or the language of which is ambiguous, is an important aid in its construction. It has been said that in the case of such a contract the practical interpretation of it by the parties is entitled to great if not controlling influence in its construction by the courts: Straus v. Wanamaker, 175 Pa. 213, at 231; Topliff v. Topliff, 122 U. S. 121. To the same effect are other cases cited in the opinion of the learned judge below and in the brief of defendant's counsel. But it would be an unwarrantable extension of this principle to imply from acts of the parties an irrevocable abrogation or alteration of an unambiguous term in a contract, unless those acts clearly show that the parties intended such irrevocable abrogation or alteration, or they furnish ground for equitable estoppel. Thus, the contract under consideration provided that the place of delivery was to be "the B. & S. R. R. or its tramway and branches," and that settlement was to be made each month for "all logs delivered" (not all logs shipped) "the previous month." The fact that before the fire the parties settled on the basis of bills made out after the logs had been loaded on the cars and shipped, falls far short of warranting an inference that the parties inter-

preted these unambiguous terms of the contract to mean delivery on board the cars of B. & S. R. R. and shipped. In fact, the plaintiffs did not load the logs on the cars. According to the meager testimony on the subject, that was done by the Goodyear Lumber Company, acting either for the defendant or the railroad company, and the plaintiffs had nothing to do with it. So that, whether we look alone to the contract or view it in the light of the course of dealing under it, it is clear that, so far as manual, physical delivery was concerned, the plaintiffs performed their part of the contract when they deposited the logs at the railroad or its tramway and branches. But it is contended, and upon this question the case hinges that the contract remained executory and the title to the logs did not pass until they were scaled, the number of feet in each log as scaled was marked on the end of the log, and a report was made to the defendant of the number of cars and the number of logs loaded, and that as the logs in question were burned before this was done the loss must be borne by the plaintiffs. There would be more plausibility in this contention if the plaintiffs had been in default in not scaling them. But they were not in default. The defendant had not sent a scaler to act jointly with the scaler to be chosen by the plaintiffs, and the time for the latter to act alone had not arrived; for it is apparent, from the wording of the contract as well as from the practice under it, that the scaling was to be done as the logs were being loaded on the cars. Until they were loaded the report contemplated by the contract could not be made. But when they should be loaded and shipped, indeed, whether they should be loaded at all, were matters over which the plaintiffs had no control whatever, but which were wholly for the defendant to determine. Unquestionably the parties had a right to agree that though the plaintiffs had delivered the logs at the place designated, yet the completion of the sale on their part should depend upon the defendant's election to load them on the cars of the railroad company; but

that this was the actual intention of the parties is not
discoverable from an inspection of their agreement, and
we are not convinced that any unbending rule of law
requires that it be imputed to them. There are numerous
cases involving the question as to how far a sale of goods
is complete when the article sold has not been separated
from other goods or property of like character, or some
other act is necessary to identify the subject of sale, and
some of these cases are reviewed in Hutchison v. Com-
monwealth, 82 Pa. 472, a case which defendant's counsel
cite as sustaining their contention. In that case Justice
PAXSON quotes the general rule laid down by Chancellor
Kent (2 Com. 496) as follows: "If anything remains to
be done between the seller and the buyer before the goods
are to be delivered, a present right of property does not
attach to the buyer. The goods sold must be ascertained,
designated and separated from the stock in quantity with
which they are mixed before the property can pass. It
is a fundamental principle pervading everywhere the doc-
trine of sales, that if goods be sold by number, weight
or measure, the sale is incomplete, and the risk continues
with the seller until the specific property be separated and
identified." But in the same connection Justice PAXSON,
while reaffirming the general rule, says: "In Smyth v.
Craig, 3 W. & S. 14, the rum and molasses were to be
gauged, and the price fixed at the purchaser's warehouse;
an act that was prevented by the vendor's retention of
the property in his actual custody. Said retention was
held to excuse actual performance, and the property
passed." This and other precedents that might be cited
justified Justice PAXSON's further remark: "We must not
make the mistake of applying technical rules of law to
cases for which they were not intended, and to which they
have no proper application"—an admonition that may
well be heeded in the present case. As already pointed
out, nothing remained to be done to separate and identify
the subject of sale, or to complete manual physical de-
livery at the place designated in the contract: therefore

we are justified in saying that the rule laid down by Chancellor Kent, and approved by our Supreme Court in Hutchinson v. Hunter, 7 Pa. 140, and Hutchison v. Com., 82 Pa. 472, does not control the case. More apposite is the rule as stated in Nicholson v. Taylor, 31 Pa. 128, another case cited by the defendant, that so long as anything remains to be done as between the vendor and vendee, for the purpose of ascertaining the amount and price of the article, the property and risk remain in the vendor. But here again it is important to keep in mind the admonition above alluded to, and to notice a distinction which Justice THOMPSON thus pointed out in the very case in which the rule is stated: "This rule is predicable of cases where no actual delivery of the property has taken place, and it is sought to give the contract the effect of changing the possession. If parties choose to deliver property without the price being fixed, the property will pass, because it is the contract and intention to pass it." The case of Sneathen v. Grubbs, 88 Pa. 147, another case cited by the defendant, is not in point; the ground upon which it was held that the title to the barges of coal was in the vendor at the time they were levied upon for his debt, was that they had not been actually delivered at the place agreed upon. The case of Strong et al. v. Dinniny, 175 Pa. 586, also cited by the defendant, is likewise not in point, and for the same reason, as will be seen by the syllabus, which correctly states the point decided as follows: "A contract by an owner of timber to cut it and deliver it to the vendee in a stream at a future time, payments to be made in certain specified portions as the work progressed, is an executory contract, and the vendee is not entitled to the possession of the timber until it is actually delivered into the stream as provided by the contract; and the stamping of the logs upon the banks or upon skids with the vendee's mark does not pass title to the vendee." No other comment is needed to show the inapplicability of this case; it might have been applicable if the logs in question in our case

had been burned before they were delivered at the place designated in the contract. The only other decision of our Supreme Court cited by defendant upon this question is Miller v. Seaman, 176 Pa. 291. But in that case there had been no actual delivery, and the terms of the contract, upon the construction of which the case turned, differed so materially from the terms of the contract under consideration here as to deprive the precedent of any controlling effect in the decision of the present case.

That as between seller and buyer there may be such delivery as will vest the property in the latter, though by the terms of the contract there be something to be done afterwards to ascertain the exact quantity to be paid for at the price fixed by the contract, is a proposition amply sustained by the dictum of Justice THOMPSON in Nicholson v. Taylor, above quoted, by the case of Gonser v. Smith, 115 Pa. 452, and, we think, was clearly decided in Diehl v. McCormick, 143 Pa. 584. Upon the subject of delivery, as affecting the right of stoppage in transitu, the court quoted the statement of the law by Baron PARKE in James v. Griffin, 2 M. & W. 623; Benjamin on Sales, sec. 1246, 6th Am. from 3d Eng. ed., 1889, as follows: "The actual delivery to the vendee or his agent, which puts an end to the transitus or state of passage, may be at the vendee's own warehouse, or at a place which he uses as his own though belonging to another, for the deposit of goods, or at a place where he means the goods to remain until a fresh destination is communicated to them by orders from himself." This is precisely what was done here; that is, the logs were delivered at a place where the defendant meant them to remain until a fresh destination should be communicated to them by orders from itself. Surely, if such delivery is sufficient to end the right of stoppage in transitu, it was sufficient to vest the title in the defendant for all other purposes, unless, under the contract, the passing of title was in abeyance until the logs were scaled and marked. Upon this question

the case of Diehl v. McCormick is a pertinent authority
in respect both of the point actually decided and of the
reasoning which supports the decision.   The case arose
upon two contracts, each for the delivery of charcoal
"on the cars" at a certain railroad station "or in sheds
at that point," for which the vendee, Diehl & Co., agreed
to pay eight and one-fourth cents per bushel of twenty-
two pounds, "delivered on the cars, subject to inspection
and P. R. R. track scale weight; payments to be made
about the twenty-fifth of each month for all coal shipped
the preceding month for which Diehl & Co. have inspec-
tion returns."   As to the charcoal delivered in the sheds,
it was held that, as it was under such dominion and con-
trol of the buyer as enabled him to ship it to any person,
at any time, and in any quantity, at his discretion, the
delivery was complete, and the title passed to the buyer.
It was held, also, that the fact that the shipment on cars
was subject to inspection and P. R. R. track scale weight,
did not affect the result at all, for this was a condition
of the payment, not of the delivery.   We quote from the
opinion of Justice MITCHELL: "That the precise ascer-
tainment of the quantity, by inspection and track scale
weight, subsequent to the storage in the sheds, would
not prevent the passing of the title, is settled by Scott
v. Wells, 6 W. & S. 357.   And in the case which, on its
facts, comes closest to the present, Gonser v. Smith, 115
Pa. 452, the lumber was selected in piles, marked, and the
price agreed upon, but the exact quantity remained open
for future ascertainment.   This court held that the de-
ferring of a settlement 'until the quantity was exactly
ascertained upon a shipment, was of no consequence in
the way of passing title.'"   It is argued that the principle
upon which Diehl v. McCormick was decided cannot be
extended to this case, because in the former the weigh-
ing was not to be done by the vendor, while in this case
the scaling, marking, and reporting were to be done by
the plaintiffs, if the defendant did not send a scaler to
act jointly with the plaintiffs' scaler. . It is true, cases may

be found wherein a distinction is made according to which party is to do the weighing, measuring or testing.    See, 35 Cyc. of Law and Pro. 285.    Whether under any circumstances this is a sound distinction to be observed in determining the intention of the parties as to the passing of title by delivery, is a question we need not discuss. For the reasons suggested in an earlier part of this opinion, we think it is not a distinction that ought to be made in this case; the provision of the contract as to the time, place, and other circumstances of the scaling, marking and reporting tends to show that the passing of title was not intended to be in abeyance until these things were done, rather than the contrary.

A few cases may be found which hold that where the contract is to sell by weight, measure or count, and the goods are destroyed before they have been weighed, measured or counted, the seller cannot recover for goods bargained and sold, even though the title has passed. But no Pennsylvania case has come to our notice that lays this down as an invariable rule, and it is not the prevailing rule: Burdick on Sales, ed. 1897, p. 56.    This will be seen by a perusal of the numerous cases cited in a note to Deadwyler v. Karow, 19 L. R. A. (N. S.) 197, amongst which may be mentioned Martineau v. Kitching, L. R. 7 Q. B. 436; Upson v. Holmes, 51 Conn. 500; Allen v. Elmore, 121 Iowa, 241; Gill v. Benjamin, 64 Wis. 362. Nor is it a just or common sense rule to apply, where, as in this case, there has been delivery, the price per 1,000 feet is fixed by the contract, and the number of logs and number of feet can be ascertained with certainty.    The prevailing view is thus expressed in Upson v. Holmes, supra: "Where goods are sold and delivered to be paid for on the happening of a certain event, the vendor will not be deprived of his right to recover merely because the event on which payment is to be made has, by accident, become impossible.    Upon the same principle, when the quantity is to be ascertained by measurement at a particular time or place, or in a particular manner, if such

measurement becomes impossible, nevertheless the quantity may be ascertained in some other manner."

We conclude that the title to the logs in question, at the time they were accidentally destroyed by fire, was in the defendant, and that, although scaling and marking them was thus rendered impossible, yet the plaintiffs are entitled to recover for the quantity they contained at the rate of $6.50 per 1,000 feet. It follows that the plaintiffs' third request for finding of law (second assignment) should have been affirmed.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment in the plaintiffs' favor for $2,441.93, with interest thereon from September 1, 1899, to the date of judgment.